

FILED

JUL - 6 2006

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO VALLEY DIVISION

ENTERED

JUL - 7 2006

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY Deputy Clerk

In re

Substantively Consolidated
Bankruptcy Estates of MIDLAND
EURO EXCHANGE INC.; MIDLAND EURO,
INC.; MIDLAND GROUP INC.; MOSHE
LEICHNER AND ZVI LEICHNER

                    Debtors

CHRISTOPHER R. BARCLAY , as
trustee of the herein
Substantively Consolidated
Bankruptcy Estates,

                    Plaintiff,

v.

YOSSI ATTIA, et al.,

                    Defendants

Case No. SV 03-13981GM
[Includes cases previously
designated Bk. Case Nos. SV 03-
13982-AG, SV 03-13986-AG, SV 03-
13987-AG, SV 03-13989-AG]

Adv. No. AD 04-01390-GM
Chapter 7

**MEMORANDUM OF OPINION RE
DETERMINATION OF GOOD FAITH OF
THE SETTLEMENT AGREEMENT
PURSUANT TO CALIFORNIA CODE OF
CIVIL PROCEDURE §877.6**

HEARING
DATE:    JUNE 7, 2006
TIME:    1:30 p.m.
PLACE:   COURTROOM 303
         21041 BURBANK BLVD.
         WOODLAND HILLS, CA 91367

## I. INTRODUCTION

Moshe Leichner and Zvi Leichner pleaded guilty to felony fraud and money-laundering charges and were sentenced to twenty years in federal prison and a restitution judgment of $98 million.[1]  The charges against them stemmed from a Ponzi scheme run by the Leichners beginning no later than 1999.  At the time, the Leichners owned and operated Midland Euro, Inc. ("MEI"), Midland Euro Exchange, Inc. ("MEE"), Midland Group, Inc. ("MGI"), and other entities (hereinafter

[1] United States v. Moshe Leichner and Zvi Leichner, U.S.D.C. No. CR 03-568, U.S. District Court for the Central District of California.

1

1 collectively referred to as "Midland Entities" or the "Debtors").
2 Midland Entities raised millions of dollars from investors to invest
3 in foreign currency transactions, but instead diverted later proceeds
4 to repay earlier investors.[2]

5      Midland Entities' Ponzi scheme unraveled in 2003.  On May 8,
6 2003, involuntary Chapter 7 bankruptcy petitions were filed and, on
7 June 12, 2003, Messrs. Moshe and Zvi Leichner pleaded guilty to
8 felony charges filed against them.  By the bankruptcy court's order
9 entered on May 16, 2003, the Debtors' Estates were substantively
10 consolidated.  Thereafter, on June 18, 2003, a Chapter 7 Trustee was
11 appointed by the Court.  As of today, proofs of claim totaling more
12 than $100 million have been filed against the Debtors' Estates,
13 including millions of dollars owed to investors.

14      This adversary proceeding is an attempt by the Trustee to set
15 aside fraudulent transfers allegedly initiated by the Debtors with
16 the intent to defraud Midland Entities' creditors, including
17 investors.  The Trustee alleges that the defendants in this adversary
18 proceeding engaged in a common scheme with the Debtors to
19 fraudulently acquire, transfer, and conceal Midland Entities' assets.

20      After protracted negotiations, the Trustee entered into a
21 Settlement Agreement with some of the defendants.  The motion by the
22 Trustee to approve the terms of the Settlement Agreement was filed on
23 May 11, 2006, and granted by the Court at the hearing on June 7,
24 2006. Simultaneously, the settling defendants filed a motion for
25 determination that the Settlement was entered into in good faith
26 within the meaning of the California Code of Civil Procedure §877.6

27

28     [2] Although the Leichners pleaded guilty in their criminal trial,
the existence of a Ponzi scheme is still a contested issue in this
adversary proceeding.

("CCP §877.6").  Such determination would bar the non-settling parties from pursuing any contribution or indemnity claims against the settling defendants.  Thereafter, on May 24, 2006, three groups of non-settling defendants filed motions opposing determination of good faith.

A hearing on the motions was held on June 7, 2006. Based on the evidence presented at the hearing, pleadings and declarations filed with the Court, and for the reasons that follow, I deny the settling defendants' motion for determination of good faith.

## II. PROCEDURAL HISTORY

On September 30, 2004, the Trustee of substantively consolidated Debtors' Estates filed this complaint against 35 individuals and entities.  The complaint pleaded 46 claims for relief and sought to set aside fraudulent transfers in an amount exceeding $10 million, to award breach of contract damages in excess of $5 million, and to obtain equitable relief from the Court.

The defendants vigorously opposed the Trustee's claims.  They filed numerous motions to dismiss, over 100 interrogatories and requests for production, and eight counter-claims seeking more than $10 million in damages.

Beginning no later than November 2005, the Trustee entered into settlement negotiations with the defendants, and in May 2006 reached an agreement with 21 individuals and entities (hereinafter the "settling defendants" or the "ATTIA defendants").

On May 11, 2006, the Trustee filed a motion for approval of the Settlement Agreement with the settling defendants. Concurrently, the ATTIA defendants filed a motion to determine that the Settlement

Agreement is a "good faith settlement" within the meaning of CCP §877.6 and to bar the non-settling defendants from pursuing contribution or indemnity claims against them.

On May 24, 2006, the following three groups of non-settling defendants filed oppositions to both the Trustee's motion to approve the settlement and the ATTIA defendants' motion for finding of good faith:

1. Blue Water Sunset, LLC ("BWS" or "Blue Water")

2. Josh Michaely; Cranks Road, Inc.; Chartwell Technology, Inc.; Shiran Investments, Inc. ("Michaely")

3. Galina Kubrak; 18607 Ventura Associates, Ltd. ("Kubrak")

The ATTIA defendants responded to the non-settling defendants' objections in a reply filed on May 31, 2006.

A hearing was held on June 7, 2006, where the non-settling defendants had an opportunity to state their objections on the record, and the Trustee clarified certain provisions of the Settlement Agreement and responded to the non-settling defendants' opposition.  Based on the motions filed with the Court and the information provided at the hearing, I granted the Trustee's motion for approval of the Settlement Agreement with ATTIA defendants. For the reasons that follow, I am denying the settling defendants' motion for determination of good faith under CCP §877.6.  This memorandum constitutes my findings of fact and conclusions of law with regard to the good faith of the Settlement Agreement between the Trustee and the settling defendants.

### III. STATEMENT OF FACTS

**A. Claims Against the Estate Filed by the Settling Defendants**

1    The Trustee alleges that in order to interfere with
2  administration of the Estate, and to hinder, delay, and defraud
3  investor creditors, the settling defendants filed millions of dollars
4  in baseless claims, as follows:

5    1.  A general unsecured proof of claim for approximately
6        $10,345,350 by Moshe Schnapp (based on an agreement
7        belonging to Glendon Advisors);

8    2.  Proofs of claim for $2,200,000 by Galina Kubrak and Josh
9        Michaely;

10   3.  A general unsecured proof of claim for $1,347,371 by
11       American Realty Group, Inc. (ARGI);

12   4.  A general unsecured proof of claim for $1,196,093 by A S
13       Holdings;

14   5.  A general unsecured proof of claim in an unspecified amount
15       filed jointly by Yossi Attia, Moshe Schnapp, ARGI, Bonanza,
16       Inc., Bonanza, LLC, and unnamed "affiliated companies,"
17       including Glendon Advisors;

18   6.  An administrative claim in an unspecified amount filed
19       jointly by Yossi Attia, Moshe Schnapp, A S Holdings, ARGI,
20       Bonanza, Inc., Bonanza, LLC, and Van Nuys Plaza, LLC;

21   7.  A general unsecured proof of claim for at least $397,789
22       filed jointly by Yossi Attia, Moshe Schnapp, and Elite
23       Seafood and Provisions, LLC;

24   8.  A secured proof of claim for $324,000 filed jointly by A S
25       Holdings, Bonanza, Inc., and Bonanza, LLC;

26   9.  A general unsecured proof of claim for $90,967 by ARGI;

27   10. A general unsecured proof of claim for $70,618 by Moshe
28       Schnapp;

11. A secured proof of claim for at least $55,000 by A S
    Holdings; and

12. A proof of claim in an unspecified amount by Blue Water
    Sunset, LLC.

### B. The Trustee's Complaint

On September 30, 2004, the Trustee of substantively consolidated Debtors' Estates filed a complaint against the following 35 individuals and entities (hereinafter "the Complaint"):

1.  Yossi Attia a.k.a. Yossef Attia
2.  Adagio Trading, Ltd.
3.  A S Holdings, LLC
4.  Aerial Development, Inc.
5.  American Realty Group, Inc., a.k.a. Nevada American Realty
    Group, Inc.
6.  Attia Gardens, Ltd.
7.  Attia Gardens, LLC
8.  Moshe Har Adir
9.  Blue Water Sunset, LLC
10. Bonanza Realty, Inc.
11. Bonanza Realty, LLC
12. Cecile Street, Inc.
13. Chartwell Technology, Inc., d.b.a. First Stop Last Stop
14. Cranks Road, Inc.
15. Elite Seafood and Provisions, LLC
16. Amotz "Bobby" Frenkel
17. Nili Frenkel
18. Glendon Advisors, Inc.

19. Highlander Financial Group, d.b.a. Highlander Financial

 Group, J&J Seafood of Las Vegas

20. Highlander Financial Group, J&J Seafood of Las Vegas

21. Galina Kubrak

22. LNSA, LLC

23. Yehoshua Michaely, aka Shuki Michaely, aka Josh Michaely,

 aka Galina Kubrak, aka Lidia Perez, aka Zvi Shapiro, aka

 Herbert Frey

24. Tania Noval a.k.a. Tania Nasehipour

25. Victor Jesus Noval

26. Pacific Crest Bank

27. Q Boy Ltd., a.k.a. Q Boy Investments, Ltd.

28. Q Boy Ltd.

29. Moshe Jacob Schnapp

30. SC SC LLC

31. S S W P, LLC

32. Shiran Investments, Inc., d.b.a. R&R Gas Station

33. Van Nuys Plaza, LLC

34. Westlock Holdings, Ltd.

35. 18607 Ventura Associates, Ltd.

The Complaint alleges that the Defendants engaged in a common
scheme with the Debtors to fraudulently transfer Debtors' assets with
intent to hinder, delay, and defraud Midland Entities' creditors,
including investors.

The Complaint pleaded 46 claims for relief, seeking to set aside
fraudulent transfers in the amount exceeding $10 million, to award
breach of contract damages in excess of $5 million, and to obtain
several kinds of equitable relief from the Court.

1     On May 12, 2005, the settling defendants filed an Answer,

2  denying the substantive allegations in the Complaint, setting forth

3  sixteen affirmative defenses, and asserting eight counterclaims for

4  damages in the amount exceeding $10 million.

5

6                  **C. Proposed Settlement Agreement**

7     Beginning in November 2005, the Trustee engaged in extensive

8  negotiations with the Defendants, resulting in a Settlement Agreement

9  with the following 21 individuals and entities[3]:

10     1.  Yossi Attia a.k.a. Yossef Attia

11     2.  Adagio Trading, Ltd.

12     3.  A S Holdings, LLC

13     4.  Aerial Development, Inc.

14     5.  American Realty Group, Inc., a.k.a. Nevada American Realty

15         Group, Inc.

16     6.  Moshe Har Adir

17     7.  Bonanza Realty, Inc.

18     8.  Bonanza Realty, LLC

19     9.  Elite Seafood and Provisions, LLC

20     10. Amotz "Bobby" Frenkel

21     11. Nili Frenkel

22     12. Glendon Advisors, Inc.

23     13. Q Boy Ltd., a.k.a. Q Boy Investments, Ltd.

24     14. Q Boy Ltd.

25     15. Moshe Jacob Schnapp

26     16. SC SC LLC

27

---

28     [3] A. O. Holdings, LLC and Ilan Kenig were not named in the original
complaint.

17. S S W P, LLC

18. Van Nuys Plaza, LLC

19. Westlock Holdings, Ltd.

20. A.O. Holdings, LLC

21. Ilan Kenig

The proposed settlement provides:

1.   The Trustee will receive $2,000,000 within 15 days of the
     Order approving the settlement, of which $50,000 has
     already been deposited in the Trustee's account;

2.   If the ATTIA Defendants fail to pay the remaining $1,950,000
     within 15 days, a judgment will be entered against them in
     the amount of $5,000,000;

3.   The Trustee and the ATTIA Defendants will execute mutual
     releases of all claims against each other;

4.   Upon receipt of the settlement payment, the Trustee will
     release and quitclaim interests in:

          1. A $475,000 trust deed on real estate located at the
          corner of Bonanza and Main in Las Vegas, NV,

          2. Shares of stock and assets of ADI, and

          3. The Trustee will remove all lis pendens and any
          other filings recorded against the Bonanza property
          (Las Vegas, NV) and the Van Nuys property (6931 & 6939
          Van Nuys Boulevard, Van Nuys, CA).

**D. Apportionment of Settlement Proceeds to Non-Settling Defendants**

The proposed Settlement Agreement contained the following
language apportioning the Trustee's recovery to the action against
the non-settling defendants:

1    (¶ 2.6) The [$2,000,000] SETTLEMENT PAYMENT is hereby allocated

2    as a pro rata recovery by the Trustee on account of the

3    ADVERSARY DEFENDANTS' disputed liability to the TRUSTEE for all

4    the damages and/or transfers alleged in the COMPLAINT against

5    the ADVERSARY DEFENDANTS.  All the parties to this AGREEMENT

6    hereby acknowledge that the total recovery by the TRUSTEE

7    pursuant to this AGREEMENT constitutes a recovery of less than

8    20% of the total amount of damages and/or transfers that the

9    TRUSTEE seeks to recover from the ADVERSARY DEFENDANTS.

10   Several non-settling defendants filed their objections with the

11   Court alleging that this language is unclear, vague, and ambiguous as

12   to the precise amount and method by which the settlement proceeds

13   would be allocated to reduce the non-settling defendants' liability.

14   At the hearing held on June 7, 2006, the Trustee stated on the

15   record his clarification of the proposed apportionment methodology.

16   Non-settling defendants' total cumulative liability is to be reduced

17   by the amount actually collected by the Trustee, which can be

18   anywhere from the $50,000 already deposited to full collection on a

19   $5 million judgment if the settling defendants fail to pay the

20   settlement amount within 15 days of the Order approving the

21   settlement and the Trustee is able to collect the entire judgment.

22   If the Agreement is performed by the settling defendants, the non-

23   settling defendants' cumulative liability will be reduced by $2

24   million, the amount of the settlement.  Each of the claims asserted

25   by the Trustee will be reduced by an equal amount calculated as the

26   "amount actually recovered from the settling defendants" divided by

27   the "total amount of claims asserted by the Trustee." Hypothetically,

28   if the Trustee recovers $1 million from the settling defendants, and

1  the total amount of claims asserted is $10 million, then the

2  proportionate reduction in non-settling defendants' potential

3  liability is 10% ($1 million divided by $10 million). Therefore, a

4  claim of $500,000 will be given credit of $50,000, and the Trustee's

5  total recovery at trial on that claim could not exceed $450,000.

6       This methodology is further explained in the Supplemental

7  Declaration of Christopher R. Barclay, the Trustee, filed on June 9,

8  2006 on request of the Court at the June 7, 2006 hearing.   The Court

9  found this allocation methodology to be fair to all parties.   The

10  Court's Order approving the terms of the Settlement Agreement,

11  entered on June 16, 2006, explicitly incorporates the allocation

12  provision as described in the Supplemental Declaration.

13

14                    **E. Collection Issues**

15       The Trustee repeatedly indicated that the primary impetus for

16  entering into the Settlement Agreement is the difficulty if not

17  impossibility of collection on any future judgment.

18       If the allegations of the Trustee have any merit, the defendants

19  are a group of extremely sophisticated individuals who engaged in an

20  elaborate scheme to transfer and conceal millions of dollars in

21  assets both in the United States and throughout the world.   The

22  Trustee stated on the record that the defendants have stayed "three

23  or four steps ahead of the Trustee" in the past and "if history is

24  any teacher, they are going to stay several steps ahead" in the

25  future when it comes to hindering the collection efforts by the

26  Trustee.[4]

27       Furthermore, there is a real credibility issue with these

28

---

[4] As stated at the hearing on June 7, 2006.

11

defendants.   There are allegations that the ATTIA defendants have
submitted false financial information in the past (such as, for
instance, in connection with getting a loan from Pacific Crest Bank
in 2001) and would not hesitate to do so in the future.

## F. Opposition by Blue Water Sunset, LLC

On May 24, 2006, non-settling defendant Blue Water Sunset, LLC
("BWS") filed a motion in opposition to determination of good faith
of the proposed Settlement Agreement.

The thrust of BWS's argument is that it is the owner of a 25%
interest in A S Holdings, LLC ("ASH"), one of the settling
defendants; that ASH sold valuable property and failed to distribute
any proceeds to BWS; that a lawsuit was filed in California Superior
Court seeking BWS's share of sale proceeds; and that BWS believes
that ASH is using funds that belong to BWS to pay its part of the
settlement amount.

Furthermore, BWS objects to the proposed apportionment of the
settlement proceeds to the non-settling defendants because it does
not take into account the proportionate liability of various
defendants, and because the remaining defendants are not joint
tortfeasors on each individual series of transfers.

## G. Opposition by Kubrak Defendants

Galina Kubrak and 18607 Ventura Associates, Ltd. ("Kubrak
Defendants") filed a motion in opposition to determination of good
faith of the proposed settlement on May 24, 2006.

The argument made by the Kubrak Defendants is that the proposed
settlement agreement does not fit within the good faith determination

1  parameters established in the leading case of *Tech-Bilt, Inc. v.*
2  *Woodward-Clyde & Assoc.*, 38 Cal. 3d 488 (1985). The objections are
3  three-fold: (a) $2 million is a low amount to settle $10 million in
4  liability, (b) there is no evidence to substantiate why such a low
5  number is being paid or how it was derived, (c) the Trustee's
6  collection concerns are overstated given that he has liens on
7  valuable assets, which he is planning to release as part of the
8  settlement.

9      Furthermore, the Kubrak Defendants allege that the settling
10 parties failed to meet their burden of explaining to the court and to
11 all other parties the evidentiary basis for the proposed allocation
12 to the non-settling defendants, as required by <u>L.C. Rudd & Son, Inc.</u>
13 <u>v The Superior Court of Alameda County</u>, 52 Cal. App. 4th 742, 750
14 (1997).  The Kubrak Defendants allege that the Settlement Agreement
15 is "at best vague and ambiguous and at worst, totally
16 incomprehensible."

17     Finally, the Kubrak Defendants allege that the Settlement is
18 unfair to the Estate, because the Trustee is giving up valuable
19 assets in exchange for a $5 million judgment, which will be difficult
20 to collect.

21
22                  **H. Opposition by Michaely Defendants**

23     On May 24, 2006, Josh Michaely, Cranks Road, Inc., Chartwell
24 Technology, Inc., and Shiran Investments, Inc. ("Michaely
25 Defendants") filed a motion in opposition to determination of good
26 faith of the settlement.

27     The Michaely Defendants' motion has two premises: (a) the
28 proposed allocation provision in the settlement is not clear, and (b)

an allocation of 50% to claims against Michaely and Kubrak Defendants is more reasonable.

The second premise is based on the notion that there are basically two sets of defendants' in this matter - the settling defendants and the non-settling Michaely / Kubrak Defendants. Both are sued on the following claims[5]:

1. $1,000,000 - 4th Claim for Relief in the Complaint;

2. $331,000 - 4th Claim for Relief in the Complaint;

3. $886,543 - 16th Claim for Relief in the Complaint;

4. $225,000 - 16th Claim for Relief in the Complaint;

5. $535,122 - 17th Claim for Relief in the Complaint.

The total amount of damages sought jointly against the Kubrak/Michaely Defendants and the Schnapp/Attia defendants is $2,977,665.[6]  Michaely Defendants argue that because there are only two groups of related defendants who are potentially liable for this amount, each group's pro rata share of liability is 50%.

## IV. DISCUSSION

### A. Good Faith Determination Under CCP §877.6

In a motion filed on May 11, 2006, the settling defendants asked the Court to determine that the settlement is a "good faith settlement" pursuant to CCP §877.6.

CCP §877.6 provides that a determination by the Court that the

---

[5] There are additional joint claims against the ATTIA Defendants and the Michaely / Kubrak defendants. For instance, 36th, 37th, and 38th Claims for Relief are asserted against A S Holdings, LLC, one of the settling defendants, and Michaely, Kubrak, and 18607 Ventura Assoc., non-settling defendants.  It is unclear why Michaely Defendants' motion does not discuss these claims.

[6] See id.

1  settlement was made in good faith bars the non-settling joint
2  tortfeasors or co-obligors from pursuing any claims for contribution
3  or indemnity against the settling defendants. CCP §877.6(c). The
4  settling defendants are entitled to a hearing on this issue. CCP
5  §877.6(a)(1).  In rendering a decision, the Court may rely on
6  affidavits by the settling defendants, any counteraffidavits filed in
7  response, and other evidence provided at the hearing.  CCP §877.6(b).
8  The party asserting the lack of good faith bears the burden of proof
9  on this issue. CCP §877.6(d).

## B. Applicability of CCP §877.6 to the Settlement of the Trustee's Claims

Of the 46 claims for relief in the Trustee's complaint, five are based exclusively on California law (Claim Nos. 21, 38, 39, 40, 46), 29 on federal law (Claim Nos. 2, 3, 5, 6, 8, 9, 11, 12, 14, 15, 18, 19, 20, 23, 24, 26, 27, 29, 30, 32 - 7, 41 - 4), and 12 on both California and federal law (Claim Nos. 1, 4, 7, 10, 13, 16, 17, 22, 25, 28, 31, 45).  The courts have established that state settlement law should be applied to state causes of action and federal settlement law must be applied to federal causes of action. See Slaven v. BP America, Inc., 958 F.Supp. 1472, 1478-79 (C.D. Cal. 1997); Kirkorian v. Borelli, 695 F. Supp. 466, 452 (N.D. Cal. 1988) (holding that federal courts should rely on CCP §877.6 in determining the good faith of a partial settlement of claims arising under California state law, and should utilize a federal rule to evaluate the good faith of a partial settlement of federal law claims); Nelson v. Bennett, 662 F. Supp. 1324, 1338 (E.D. Cal. 1987) (articulating a uniform rule to evaluate the good faith of a partial settlement of federal claims).

1    Thus, an appropriate question to be asked is whether a uniform

2 federal rule should be used to evaluate the good faith of the

3 settlement, at least with respect to the majority of the claims that

4 are being settled. The Court does not resolve this question,

5 however, because the settling defendants have only moved for

6 determination of the good faith of the Settlement under CCP §877.6.

7 The discussion herein is based on the relevant provisions of

8 California law only.

9

10          **C. The Standard for Determination of Good Faith**

11    Good faith of the settlement agreement is a question of fact to

12 be resolved at the discretion of the trial court. See, e.g., Owen v.

13 United States, 713 F.2d 1461, 1466 (9th Cir. 1983). The Supreme Court

14 of California articulated a series of factors to be relied upon in

15 determining good faith. See Tech-Bilt, Inc. v. Woodward-Clyde &

16 Assoc., 38 Cal. 3d 488, 502 (1985). The factors are

17    1. A rough approximation of plaintiffs' total recovery and the

18          settler's proportionate liability;

19    2. The amount paid in settlement;

20    3. The allocation of settlement proceeds among plaintiffs;

21    4. A recognition that a settlor should pay less in settlement

22          than he would if he were found liable after trial;

23    5. The financial conditions and insurance policy limits of

24          settling defendants; and

25    6. The existence of collusion, fraud or tortuous conduct aimed

26          to injure non-settling defendants' interests. Id. at 499.

27    The Court explained that the party asserting the lack of good

28 faith should be permitted to demonstrate, if he can, that the

16

1 settlement is so far "out of the ballpark" in relation to these
2 factors as to be inconsistent with the equitable objectives of the
3 statute. Id. at 499 – 500.  Such objectives are two-fold: the
4 equitable sharing of costs among the parties at fault and the
5 encouragement of settlements. Id. at 493 – 94.

### D. Application of the *Tech-Bilt* Factors

8     The Trustee's claims exceed $10 million, the amount of
9 fraudulent transfers pleaded in the complaint.  The Trustee believes
10 that he would be successful at trial in proving that the defendants
11 received the alleged fraudulent transfers.  The settling defendants
12 are named in all 46 claims for relief, and are likely to be at least
13 jointly liable for most of the damages if the Trustee succeeds in
14 proving his claims.

15     The proposed settlement amount is a $5 million judgment that can
16 be satisfied by paying $2 million within 15 days of the Order
17 approving the settlement.  Thus, the proposed settlement is
18 approximately 50% of the settling defendants' potential liability, to
19 be discounted to 20% if the settling defendants fully comply with the
20 Settlement Agreement within 15 days of the Order.  In addition, the
21 settling defendants agree to dismiss their claims against the estate
22 in the amount exceeding $10 million.  The Trustee disputes the
23 validity of these claims, and their precise value has not been
24 determined.

25     The Court recognizes that a settlor should pay less in
26 settlement than he would if he were found liable after trial.  The
27 non-settling defendants failed to show that either the $2 million
28 cash payment or the $5 million judgment combined with the withdrawal

1  of the proofs of claim totaling millions of dollars is so far "out of
2  ballpark" in relation to the potential $10 million liability as to be
3  inconsistent with the equitable objectives of the statute.

4       There is no suggestion of collusion, fraud or tortious conduct
5  between the settling parties and the Trustee.  The evidence indicates
6  that the settlement was negotiated at arm's length.  The non-settling
7  parties offered no proof to contradict the settling defendants' claim
8  that there is no insurance coverage due to the intentional nature of
9  the alleged acts.

10      The financial condition of the settling defendants is a key
11  factor in determining whether a settlement was made in good faith.
12  See Tech-Bilt, 38 Cal. 3d at 499.  Even where the claimant's damages
13  are obviously great and the liability therefor is certain, a
14  disproportionately low settlement figure is often reasonable in the
15  case of a relatively insolvent joint tortfeasor. Id.  In this case,
16  however, the Court has no evidence of the financial condition of the
17  settling defendants.  None of the parties proffered this evidence,
18  despite the Trustee's indication that such information was available
19  for their inspection.  Therefore, this factor is presumed irrelevant,
20  and, based on the indiscriminate application of the Tech-Bilt
21  factors, the Court could find that the settlement was entered into in
22  good faith.

23

24      **E. Tech-Bilt is Not Dispositive on the Issue of Good Faith**
25      The criteria set forth in the Tech-Bilt case, however, are not
26  seen by this Court as exclusive.  See Brehm Communities v. Superior
27  Court, 88 Cal. App. 4th 730, 737 (2001) ("It is well possible that
28  the court will determine other criteria are more appropriate; if so,

1   such criteria should be used."). To make an informed and intelligent
2   decision, the Court must first understand who benefits from the
3   proposed settlement.

4       This case is about the Trustee's ability to collect and to do so
5   within a reasonable period of time. The Trustee alleges that the
6   settling defendants, the non-settling defendants, and the Debtors
7   engaged in an elaborate scheme to defraud the Debtors' investors by
8   transferring and hiding the Debtors' assets. In doing so, they
9   allegedly did not hesitate to provide misleading and inaccurate
10  financial data. They created a complex web of shell entities,
11  offshore structures, and foreign bank accounts that make any tracing
12  and recovery of the assets extremely difficult. They made it clear
13  to the Trustee that any judgment he obtains against them would be
14  hard if not impossible to collect.

15      The Trustee was forced to enter into this settlement, because,
16  in his own words, the "untrustworthiness and dishonesty of the
17  Attia/Schnapp Group" is a precursor of "extraordinarily difficult
18  collection problems" in executing a future judgment.[7] There are no
19  assurances that if the settling defendants fail to make the required
20  $2 million payment, the Trustee will see anything of the $5 million
21  settlement, and obtaining a $10 million judgment does not make
22  collectibility more certain. The true value to the Estate comes from
23  the Trustee's possible receipt of $2 million and, if not, his ability
24  to start immediate execution on a $5 million judgment. And although

25

26  [7] See Supplemental Declaration of Christopher R. Barclay filed on
    June 9, 2006, p. 2. At the hearing on June 7, 2006, the counsel for the
27  Trustee repeatedly made representations to this effect, without
    eliciting any objections from the settling defendants. At the request
    of the Court to submit further documentation on the mechanics of the
28  allocation process, the Trustee followed up with his Supplemental
    Declaration which re-affirmed the Trustee's position on this issue.

1  there are serious doubts that he would be able to collect even part
2  of the $5 million, the sooner he starts, the better his chances are.
3  Thus, the Trustee acted in good faith in negotiating and accepting
4  the terms of the Settlement Agreement.

5      However, if the good faith determination is granted to the
6  settling defendants, the Agreement would be prejudicial and harmful
7  to the non-settling parties.  Assuming that the settling defendants
8  actually pay $2 million, the Trustee was forced to settle for far
9  less than the settling defendants' potential liability, and he has
10 preserved the right to pursue the remainder of his claims against the
11 non-settling defendants.  Thus, if the Trustee succeeds in proving
12 his claims, the non-settling defendants could end up being liable for
13 approximately $8 million, an amount disproportionate to their role in
14 the scheme.

15     To ensure that the settlement is fair to the non-settling
16 parties, the Court could adopt an approach delineated by the federal
17 court in Franklin v. Kaypro, 884 F.2d 1222, 1225 (9th Cir. 1989).
18 Pursuant to *Kaypro*, when the courts limit the non-settling parties'
19 ability to pursue contribution and indemnity claims against the
20 settling defendants, they should simultaneously limit liability
21 exposure of the non-settling defendants to their actual percentage of
22 fault.  In other words, at trial, "the jury is asked... to
23 determine... the percentage of culpability of each of the non-
24 settling defendants," and plaintiffs' recovery is limited to that
25 percentage.

26     Given the unique facts of this case, however, following the
27 *Kaypro* approach would be unjust to the Estate.  The Trustee would end
28 up, in all likelihood, with a $5 million practically uncollectible

20

1 judgment against the settling defendants, and a judgment against the
2 non-settling defendants that would be substantially reduced to
3 reflect their share of fault.  For instance, if the non-settling
4 parties are found 10% liable for the fraudulent transfers totaling
5 $10 million, the Trustee would have a judgment against them for
6 approximately $1 million.  This would be unfair to the Estate because
7 the non-settling defendants are much more likely than the Trustee to
8 get satisfaction of their claims against the settling defendants with
9 whom they chose to do business.  They were part of the common scheme
10 with the settling defendants; they were sophisticated businesspeople
11 who would not have entered in dealings with each other without
12 knowing the real financial condition of their partners; they are
13 undoubtedly more familiar than the Trustee with the methods and
14 tactics used to transfer and hide the assets.  It would only be fair
15 to let the Estate sue the non-settling defendants for the remainder
16 of fraudulent transfers and let them, and not the Trustee, play the
17 collection games with the settling defendants.

18     Thus, denying the good faith motion is the only way to
19 accomplish the equitable goals of the statute.  It preserves fairness
20 to the non-settling parties who, in the event that a disproportionate
21 judgment is entered against them, can turn around and sue the
22 settling defendants for contribution.  It preserves fairness to the
23 Trustee, who can start his collection efforts against one group of
24 defendants immediately, keep pursuing his claims against the other
25 group, and hopefully be able to collect something from one or the
26 other.  It would also be fair to the settling defendants, because
27 their intentional behavior forced the Trustee to enter into an
28 inadequate settlement, and created this situation in the first place.

1  Finally, it does not interfere with the settlement, since a good

2  faith finding is not a condition to that agreement.

3  Based on the foregoing, the Court finds that good faith

4  bargaining is a prerequisite to a good faith settlement.  Where the

5  settling defendants engaged in intentional conduct damaging to the

6  Estate and, thereafter, sought protection from the Court that would

7  inflict further damage on the Estate or the non-settling parties, the

8  Court cannot find that the settlement was entered into in good faith

9  under CCP §877.6.

10

11  **V. CONCLUSION**

12  Based on the memoranda and declarations submitted by the

13  parties, the pleadings on file with the Court of which the Court took

14  judicial notice, and the oral offer of proof presented at the

15  hearing, I find that the settling defendants did not act in good

16  faith in reaching the Settlement Agreement with the Trustee.

17  Therefore, the motion for determination of good faith pursuant to CCP

18  §877.6 is denied.

19

20  DATED:  7/6/06

21

22                          GERALDINE MUND
                         United States Bankruptcy Judge
23

24

25

26

27

28

1

2

## CERTIFICATE OF MAILING

I, _____ PHILIP HARRAWAY _____ , a regularly

3  appointed and qualified clerk of the United States Bankruptcy Court for the Central
District of California, do hereby certify that in the performance of my duties as

4  such clerk, I personally mailed to each of the parties listed below, at the
addresses set opposite their respective names, a copy of the

5

**MEMORANDUM OF OPINION RE DETERMINATION OF GOOD FAITH OF THE**

6  **SETTLEMENT AGREEMENT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE**
**§877.6**

7

in the within matter.  That said

8  envelope containing said copy was deposited by me in a regular United States
mailbox in the City of Los Angeles, in said District, on _____

9

10  Chapter 7 Trustee
Christopher Barclay, Trustee

11  Mack | Barclay, Inc.
600 Anton Boulevard, Suite 1350

12  Costa Mesa, CA 92626

13  Leonard I. Gumport
Aleksandra Zimonjic

14  Gumport | Reitman
550 South Hope Street, Suite 825

15  Los Angeles, CA 90071

16  Attorneys for Christopher Barclay, Chapter 7 Trustee

17  Robert M. Yaspan, Esq.
Law Offices of Yaspan & Thau

18  6931 Van Nuys Boulevard, Second Floor
Van Nuys, CA 91405

19  Attorney for Movants

20  Timothy R. Harrigan
Lang, Harrigan & Carvalho, LLP

21  21021 Ventura Boulevard, Suite 450

22  Woodland Hills, CA 91364

23  Andrew Goodman, Esq.
Greenberg & Bass, LLP

24  16000 Ventura Blvd., Suite 1000
Encino, CA 91436

25

Philip D. Dapeer, Esq.

26  Philip D. Dapeer, a Law Corp.
5670 Wilshire Boulevard, Suite 1470

27  Los Angeles, CA 90036

28

1  Tania Noval, In Pro Per
   24389 Avenida de Los Ninos
2  Laguna Niguel, CA 92677-3516

3  c/o Amotz "Bobby" Frenkel
   5707 Starwood Court
4  Thousand Oaks, CA 91362

5
   c/o Victor Jesus Noval
6  13600 Marina Pointe #1915
   Marina Del Rey, CA 90292
7
   U.S. Trustee - Interoffice Mail
8  c/o Jennifer Braun

9

10

11  _____

12                    (Clerk)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28